Pearson, J.
 

 The effect of the contract of sale by Walker to Pannill, was to make "Walker a trustee to secure the purchase-money, and then in trust for Pannill. By the death of "Walker, the legal title descended upon his heirs-at-law, upon the same trusts. By the payment of the purchase-money to
 
 *439
 
 the administrator of Walker, the first trust was discharged, and the heirs held the legal title simply in trust for Pannill, all wich is declared in the decree, which, with the pleadings, makes a part of the case. By it.the heirs are directed to make title to Pannill upon their arrival at full age, unless cause be shown against it,
 
 &g.
 
 The heirs have never made a conveyance, and the question is whether Pannill,. or those claiming to stand in his place, have, in any way, devested the title out of them ? The relation between the heirs of Walker and Pan-nill was that of trustee and
 
 eest/wi que
 
 trust, by
 
 agreement of the parties.
 
 So, Pannill’s possession, for no length of time, could devest the title of
 
 Ms
 
 trustee, for the simple reason that it could not be adverse. This is settled in
 
 Taylor
 
 v.
 
 Dawson,
 
 3 Jones’ Eq. Rep. 86. Washington became the purchaser of Pannill’s interest in 1806, at execution sale, went into possession, and continued in possession until his death, in 1826. We will put out of the case the fact that, in 1815, Washington was appointed guardian of Elizabeth, one of the heirs, who afterwards married ITobgood, for if his becoming guardian does not prejudice his claim, it certainly does not aid him in an attempt to defeat his ward’s estate, and usurp her title.
 

 Washington purchased before the act of 1812. The trust estate of Pannill was not then subject to be sold under execution, and the utmost right which he could set up under his purchase, was to have the possession of Pannill, which we admit he could have recovered in ejectment from Pannill, the defendant in the execution, and in equity he was entitled to be substituted to the rights of the creditor, whose debt he had paid, and thereby succeeded to the equity of Pannill to the extent of holding it as a security for the money which he had paid.' So we see that Washington’s interest was an emi-nation, or an equity growing out of the equity of Pannill, and as the latter could not, by any length of possession, devest the title of his trustee, of course Washington could not do so.
 

 This disposes of the case, even if we make the supposition . that, after the death of Washington, the possession of -the de-
 
 *440
 
 visee and ber alienee were adverse. Eor as "Washington’s possession was not adverse, Hobgood, upon his marriage, and the birth of a child, and the death of his wife, became tenant by the curtesy of the legal estate, and her heir had no right of entry until his death. He was certainly alive in 1843. Mary Hobgood, now Mary Taylor, the less^’, married in 1842; she was, consequently, under coverture when her right of entry accrued, and is still so..
 

 From the view we have taken of the case, it is unnecessary to decide an interesting question of evidence, which was presented on the trial.
 

 Pes Curiam. Judgment reversed, and a
 
 venire de novo.